IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ATM EXPRESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: 2:04cv990-WC |
| | ) | |
| MONTGOMERY, ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND JUDGMENT**

This Court previously resolved liability in favor of Plaintiff, ATM Express, Inc. (ATM), and entered Judgment on July 8, 2005, holding Montgomery, Alabama's licensing ordinance unconstitutional as applied to ATM. Memorandum Opinion and Order (Doc. #35); Judgment and Injunction (Doc. #36). Only the issue of damages remains pending before the Court. The Court held a two-day trial on the issue beginning July 26, 2007. At the conclusion of trial, the undersigned verbally awarded $371,283.00 in damages. The Court also determined that ATM would not receive prejudgment interest. Additionally, the parties agreed to an attorney's fees award in the amount of $30,000.00 for the period July 26, 2005, through July 27, 2007.[1] For the reasons detailed

---

[1] Defendant Montgomery, Alabama (the City) previously agreed to pay ATM $24,975.00 in attorneys' fees for the period October 15, 2004, through July 25, 2005. See Compl. (Doc. #1) at 1; Jt. Mot. to Remove Case from the Trial Docket; to Abate Proceedings for a Specific Pd. of Time; to Establish a Measure of Damages; to Provide for Briefing on the Issue of Damages and to Provide for an Award of Attorney's Fees (Doc. #50) at 5 (Joint Stipulation).

1

below, the Court enters judgment in favor ATM and against the City for damages in the modified amount of $376,868.00 in lost profits and $30,000.00 in attorneys' fees.[2]

## I.     BACKGROUND

Following the Court's favorable determination, ATM filed a Notice of Objective Damages and Memorandum of Law in Support, claiming lost profits and out-of-pocket expenses or "carrying costs"[3] in the amount of $980,082.36.  Notice of Objective Damages and Memorandum of Law in Support (Doc. #47) at 2, 4.  ATM also sought prejudgment interest and objected to any set off in the damages award for refusing to re-apply for a city business license.  Id. at 7-8.

Almost a month later, the parties filed a Joint Stipulation, establishing a measure of ATM's damages based on a 275-day period commencing July 8, 2005, through April 9, 2006.  Joint Stipulation (Doc. #50) at 1-2.  The Joint Stipulation also provided that the measure of ATM's damages, and in particular lost profits, "shall be determined using the actual income and expenditures for . . . ATM . . . for th[at] period."  Id. at 3; see also Pl.'s

---

[2]Although the Court made a ruling from the bench regarding ATM's damage award, the Court's oral pronouncement did not constitute a judgment under Fed. R. Civ. P. 58(b).  In preparing this Memorandum Opinion and Judgment, the Court carefully reviewed the evidence of record and testimony presented at trial, discovering several deductions from ATM's net income which the Court inadvertently permitted, despite other rulings to the contrary during trial.  The Court accordingly modifies its previously stated damages award, as described below, to reflect all its rulings at trial.

[3]ATM defines out-of-pocket expenses or carrying costs as "recurring expenses such as rent, electricity and licensing fees."  It also includes "interest expense for loans required . . . to 'float' the business while [ATM] was closed" as well as "payments for supervisory personnel who maintained the physical premises during the pendency of the litigation."  Notice of Objective Damages and Memorandum of Law in Support (Doc. #47) at 2.

Supp. Notice of Objective Damages (Doc. #54) at 2 (stating that the parties stipulated ATM's lost profits would be measured by its actual experience over a comparable 275-day period).[4]  No other terms were stipulated.

Subsequently, ATM filed a Supplemental Notice of Objective Damages, again seeking lost profits and carrying costs, but in the lowered amount of $541,745.44.  Pl.'s Supp. Notice of Objective Damages (Doc. #54) at 2.  ATM also asserted entitlement to "interest" payable to Optivest South, Inc. (Optivest) in the amount of $49,700.73.  Id. ATM indicated the interest constituted an "expense" "on funds borrowed to pay carrying costs during the initial period of closure." Id. at 2-3.

The City objected to ATM's calculation of damages.  Relevant to trial, it argued that ATM's expenses calculation did not account for any opening inventory, income taxes, gross receipts tax, or unpaid business licenses fees.  Def.'s Resp. and Objection to Pl.'s Supp. Notice of Objective Damages (Doc. #56) at 1-2.

At trial, ATM again sought damages for lost profits, carrying costs, and interest totaling $591,445.47.  Pl.'s Trial Br. (Doc. #77) at 1-2.  ATM, however, opposed deducting income tax from the damage award, because the award itself is subject to taxation. Id. at 2 n. 1 & 5-8.  It also again opposed a set off for refusing to obtain a business license, arguing because the ordinance as applied to ATM was unconstitutional,

---

[4]The Court points out the document mistakenly indicates the exemplar period consisted of only 245 days, but it properly identifies the length of the exemplar period.  Pl.'s Supp. Notice of Objective Damages (Doc. #54) at 2.

the ordinance was void and unenforceable. Id. at 4-5, 8. Last, ATM opposed any set off for city sales taxes and fees in connection with ATM's video booths. Id. at 8. ATM claimed it paid those fees; notwithstanding that point, ATM also claimed the City waived the right to claim any set offs, when it failed to plead a "set off" defense or file a counterclaim in this action. Id. at 8.

The City again objected to ATM's calculation of damages, arguing ATM's lost profits calculation failed to deduct depreciation, the cost of supplies, and any city, county, or state license fees, sales taxes, and use taxes. Def.'s Trial Br. (Doc. #80) at 1-2, 7-9. It also set forth two additional arguments. First, the City argued that the parties agreed to limit ATM's damages to the actual net profits earned by ATM during the exemplar period. Id. at 3, 5. As a result, the City maintains ATM cannot modify the Joint Stipulation to include carrying costs and/or interest. See id. at 4-5, 9-10. The City further maintains recovery of these items would constitute double recovery. Id. at 9-10. Second, it argues that "ATM has failed to prove that the damages measured by the exemplar period were proximately caused by the City's unconstitutional ordinance." Id. at 7. The City maintains ATM could have re-applied for a business license and re-opened its business. Id. at 6-7. The Court now turns to the parties' arguments, addressing two preliminary matters first.

## II.   DISCUSSION

### A.   Preliminary Issues

#### 1.   Proximate Cause

The City claims ATM has failed to prove the City's unconstitutional ordinance proximately caused ATM's damages.  Rather, the City asserts ATM's voluntary election to commence operations without a business license proximately caused the business' closure, which ATM could have cured by re-applying for a business license.  The Court disagrees.

This Court previously found the City's licensing ordinance unconstitutional as applied to ATM and entered a Judgment in ATM's favor on July 8, 2005.  Memorandum Opinion and Order (Doc. #35); Judgment and Injunction (Doc. #36).  It necessarily follows from that determination the City, the institution that promulgated the unconstitutional business license ordinance, caused harm to ATM's business.  In other words, ATM successfully met its burden of proof.  The City did not file a motion for reconsideration of or appeal the Court's ruling.  Indeed, the City informed the Court that it had no intention of filing a notice of appeal.  Order of August 2, 2005 (Doc. #44) at 1.  The City instead moved forward and actively participated in discussions concerning ATM's damages.  E.g., Joint Stipulation (Doc. #50); Def.'s Trial Br. (Doc. #80); Jt. Stipulation of Facts for Trial (Doc. #76).  The City also repeatedly represented that the only issue remaining involved ATM's damages.  E.g., Jt. Mot. to Grant Additional Time

for Development of Damages (Doc. #58); Def.'s Trial Br. (Doc. #80) at ¶ 1 (representing that "[l]iability in this case has already been resolved in favor of . . . [ATM]. This Court entered a Judgment in favor of [ATM] on July 8, 2005, finding that the [City's] licensing ordinance was unconstitutional as applied to [ATM]. . . . The issue of damages remains pending before the Court."); Jt. Stipulation of Facts for Trial (Doc. #76) at ¶ 1 (same).[5] The Court will not, at this late hour, overturn its prior determination.

Moreover, ATM could not "cure" its injury by re-applying for another city business license. The Court found the business license ordinance unconstitutional as applied to ATM. The City did not present any evidence indicating during the exemplar period it amended the ordinance's defects. The ordinance, as applied to ATM, continued to violate ATM's constitutional rights. Under these circumstances, ATM had no legal obligation to seek out a city business license during the exemplar period. See Penn v. Attorney Gen. of State of Ala., 930 F.2d 838, 841 (11th Cir. 1991) (citing Ex Parte Siebold, 100 U.S. 371, 376-77 (1879)); see also Welsh v. United States, 398 U.S. 333, 361 (1970) (holding if a law is held in violation of the Fourteenth Amendment's guarantee of equal protection, the remedy is either to extend the privileges to the unprotected class or "declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit").

---

[5]To the extent that the City contested proximate cause in reserving discussion of ATM's "entitlement" to damages in the Joint Stipulation, the City should have moved the Court for reconsideration or appealed its determination.

### 2. Credibility of Witnesses

Because the Court's lost profits determination turns on how credible it finds the parties' expert witnesses, the Court sets forth those decisions first. The Court finds ATM's expert witness somewhat credible. See CBS Broad., Inc. v. EchoStar Commc'ns Corp., 450 F.3d 505, 517 n. 23 (11th Cir. 2006); see also Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985) ("[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.") (citing Wainwright v. Witt, 469 U.S. 412 (1985)). During trial, ATM's expert provided unclear, evasive responses to questions as well as inconsistent responses. The expert also repeatedly interjected responses before counsel finished questioning him. The undersigned observed the expert's demeanor in court and found he, at times, appeared excited, unnaturally confident, anxious, and aggressive, rendering his testimony difficult to follow, unhelpful, unpersuasive, and not completely believable.

The undersigned finds the City's experts credible, as they testified consistently and provided clear, succinct responses. They freely corrected their computations when mistakes were brought to their attention. They also appeared comfortable in the courtroom and assured of their responses. The Court finds their testimony instructive and honest. With these determinations in mind, the Court now addresses ATM's damages.

### B.     Damages Calculation

#### 1.     Joint Stipulation

As indicated above, the parties' Joint Stipulation established a measure of ATM's "damages" based on a 275-day period commencing July 8, 2005, through April 9, 2006. Joint Stipulation (Doc. #50) at 1-2. The Joint Stipulation also provided the measure of ATM's "damages," including lost profits, "shall be determined using the actual income and expenditures for . . . ATM . . . for th[at] period." Id. at 3; see also Pl.'s Supp. Notice of Objective Damages (Doc. #54) at 2 (stating that the parties stipulated ATM's lost profits would be measured by its actual experience over a comparable 275-day period). While the parties did not stipulate to any other specific term, the Joint Stipulation expressly twice characterized their "resolution" or "settlement agreement" as "partial." Joint Stipulation (Doc. #50) at 2.

During trial, the City interpreted the Joint Stipulation as limiting ATM's damages to the recovery of lost profits only. Def.'s Trial Br. (Doc. #80) at 3, ¶ 9 ("The parties agreed to the measure of damages. It flies in the face of this agreement to throw in additional damages outside the scope of the agreed-upon measure of damages. Only lost profits are recoverable."). The Court disagrees with the City's interpretation.[6]

The Court reads the language of the Joint Stipulation plainly, naturally, and

---

[6] The Court observes in the preceding paragraph, the City appears to contradict itself, stating that the "exemplar period was not termed merely a 'measure of lost profits.'" Def.'s Trial Br. (Doc. #80) at 3, ¶ 8.

according to its ordinary meaning.⁷  Throughout the Joint Stipulation, the parties used the

word "damages" generally without restriction or specification.  Joint Stipulation (Doc.

#50) at 1 unnumbered para. 1, & ¶¶ 1, 3-5, 9, 12-13.  The Court reads this term as written,

in its general, non-restrictive sense and finds the parties limited ATM's recovery of all

damages to the exemplar period.  This interpretation is supported by the fact the parties

did not expressly define the term damages as only meaning lost profits, nor did they

expressly restrict ATM's damages to the recovery of lost profits only.  One would expect,

---

⁷The City maintains the Court should construe the Joint Stipulation as a contract.  Def.'s Trial Br. (Doc. #80) at 4-5.  Under Alabama law, the standards for construing contractual provisions are as follows:

> 'Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract.  Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning.  If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written.  *On the other hand, if the court determines that the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction to resolve the ambiguity.*  See [Voyager Life Ins. Co. v.] Whitson, 703 So.2d [944,] 948 [(Ala.1997)].  *Under those established rules of contract construction, where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms.*  See id. at 948-49; Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala. 1995).  Additionally, "if there exists inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed."  Last, if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of *contra proferentem,* any ambiguity must be construed against the drafter of the contract.'

Extermitech, Inc. v. Glasscock, Inc., 951 So.2d 689, 694 n. 3 (Ala. 2006) (quoting Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala. 2000)) (some citations omitted; emphasis added).

9

if the parties had this intent, to see this express term.  Instead, the parties only once reference lost profits, stating "the amount of [ATM]'s lost profits for [October 4, 2004 through July 8, 2005,] may be difficult to ascertain with precision and would be costly to determine both in terms of litigation expense and the Court's time."  Id. at ¶ 8.  Thus, the Court does not find, as the City advocates, the stipulation limited ATM's recovery to merely lost profits.  Id. at 3, ¶ 8.  The Court now turns to address ATM's lost profits award.

### 2. Lost Profits[8]

The parties proffered differing lost profits awards throughout the damages portion of this lawsuit.  At the commencement of trial, ATM sought $419,503.17, while the City offered $274,073.00 under a capital expenditures calculation or $333,068.00 under a depreciation calculation.  Pl.'s Trial Exh. 6; Def.'s Trial Exhs. 2, 3.  The parties presented detailed, line-item revenue and expense charts based upon ATM's profit and loss statements supporting their figures.  Id.; see also Pl.'s Supp. Notice of Objective Damages (Doc. #54-3) at 1-36.  The parties did not dispute the amount of revenue for the exemplar period.  They also did not dispute the amount of the following expenses: advertising, fee (bank), fee (merchant company), fee (management DSX), gas, insurance, meal and

---

[8] To the extent that ATM asserts entitlement to carrying costs and/or interest under the theory that it can recover "all damages naturally flowing from" a violation of its civil rights, as averred by the City, for the reasons discussed infra as well as the fact that ATM entered into an agreement with the City limiting its damages to the exemplar period, the Court finds ATM has waived this particular argument.

entertainment, merchandise (freight), pest control, phone, postage and delivery, professional fees, rent (equipment), repairs and maintenance, supplies (office), trash removal, travel and lodging, uniform, and water.  Id.  The Court therefore adopts these undisputed amounts as set forth in the City's Trial Exhibit 3A.

The City adjusted certain other expenses proposed by ATM, including: automotive, electricity, labor (payroll company), license fees, city business license, merchandise, inventory change, rent, security tape viewing, sales and use taxes, and supplies.[9]  E.g., Def.'s Trial Exhs. 2, 2A, 3, 3A.  The City also added in an expenses for amortization and either capital expenditures or depreciation.  The City provided an explanation for each adjustment or addition.  Id.  During trial, ATM's expert opposed each of these adjustments with the exception of the inventory change, because, in his opinion, the City's adjustments were calculated on an accrual, rather than cash, basis.  In calculating the above-listed expenses on an accrual basis, the expert claimed the City did not make appropriate front-side adjustments to the expenses.

The Court accepts the City's adjustments for the automotive, electricity, labor (payroll company), license fees, merchandise, inventory change, rent, and security tape viewing expenses.  With regards to the inventory adjustment, neither side opposed the City's adjustment.  As to the other expenses, ATM's expert could not confirm whether his

---

[9]The Court discusses the City's proposed expense deduction for a city business license below as well as its proposed city, county, and state sales and use taxes.  The Court merely lists them here for completeness.

proposed calculation of the expenses in question were on a cash or accrual basis, nor did the expert conduct an audit to verify the accuracy of his expense calculations. Moreover, the expert admitted his opposition to the City's expense calculations was based on speculation. The City's expert, Richard B. Younger, however, testified that he made both front-side and back-side adjustments to the expenses. Because the Court finds the City's experts more credible, and the City's experts stated affirmatively the manner in which they computed their expense calculations, the Court accepts the City's adjustments for the following expenses: automotive, electricity, labor (payroll company), license fees, merchandise, inventory change, rent, and security tape viewing. Def.'s Trial Exhs. 2A, 3A.

In calculating ATM's lost profits, the Court recognizes the basic purpose" of § 1983 damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights." Carey v. Piphus, 435 U.S. 247, 254 (1978); Gilmere v. City of Atlanta, 864 F.2d 734, 739 (11th Cir. 1989). It has thoroughly reviewed the parties' charts, weighed the evidence and testimony presented, and now determines that ATM's lost profits equate to $376,868.00.[10] Cf. Gilmere, 864 F.2d at 740 (citing Stallworth v. Schuler, 777 F.2d 1431 (11th Cir. 1985)) (providing the district court has a great deal of discretion in deciding the level of damages to be awarded). In reaching this figure, as ruled from the bench, the Court did not allow the City's deduction for supplies in the

---

[10]For the reasons explained infra, the Court has modified its previously pronounced award to $376,868.00.

amount of $19,943.00. The City's expert indicated he arrived at this figure based on his estimate that ATM used eighty-percent of the start-up supplies and office supplies during the exemplar period. Def.'s Trial Exh. 2A, 3A. The City did not present any other evidence to support the expert's admitted supposition. The Court will not reduce ATM's lost profits based on mere conjecture, as this would leave ATM less than whole.

The Court also computed ATM's lost profits award with a depreciation adjustment as presented in the City's Trial Exhibit 3A. Throughout the trial, ATM's expert clearly opposed a capital expenditure adjustment. While he also opposed a depreciation adjustment, he implied a preference for the latter when he testified that if the Court were to have a depreciation adjustment, the expense would equate to $5,995.00. ATM's expert also identified the City's proposed depreciation deduction in the amount of $29,345.00 as a "Section 179 <u>expense</u>" or "<u>deduction</u>." (emphasis added). In characterizing the $29,345.00 as an "expense" or a "deduction," ATM's expert conceded the validity of the City's line-item adjustment. The Court, therefore, finds a depreciation deduction in the amount of $29,345.00 proper.[11] See Def.'s Trial Exh. 3A. The Court now turns to address whether ATM shall receive a set off in its damages.

---

[11] The Court questioned the City at trial about its income tax deduction argument presented in its Response and Objection to ATM's Supplemental Notice of Objective Damages (Doc. #56). Counsel responded simply the "golden rule." The Court presumes the City's invocation of the golden rule, in the context of the trial, abandoned the argument. To the extent that the Court has misinterpreted counsel's statement, the Court refuses to reduce ATM's lost profits award by the amount of income taxes payable on that award. To do so, the Court would subject ATM to double taxation. See Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 502-03 (1968); Kalman v. Berlyn Corp., 914 F.2d 1473, 1482-83 (Fed. Cir. 1990).

### a.  Set Offs

As stated above, the City argues the Court should deduct city, county, and state license fees, sales taxes, and use taxes because these fees constitute legitimate business expenses required by law.  The City further maintains the Joint Stipulation instructs the parties to use only "actual income and expenses, including those required to be paid."  Def.'s Trial Br. (Doc. #80) at 7.  ATM counter argues the City waived the right to claim any set offs, when it failed to plead a "set off" defense or file a counterclaim in this action.  ATM cites Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir. 2000) for support.  The Court agrees with ATM.

In Frederick, 205 F.3d at 1287, defendant Kirby Tankships, Inc. argued that only defenses which relieve liability must be affirmatively pled, but not defenses that diminish damages.  The Eleventh Circuit Court of Appeals rejected Kirby's arguments and held that failure to mitigate damages is an affirmative defense under Federal Rule of Civil Procedure 8(c).  Id.  It further held that the district court did not err in rejecting Kirby's jury instruction because failure to plead an affirmative defense results in waiver of that defense.  Id. (citing Am. Nat'l Bank v. FDIC, 710 F.2d 1528, 1537 (11th Cir. 1983)).

Here, the City did not set forth an affirmative defense of failure to mitigate damages in its Answer (Doc. #14), nor did it set forth any other defenses which would reduce ATM's damages in that pleading.  Instead, the City waited until trial to assert a "set off" –couched as an alleged "expense"– in ATM's damages for unpaid county, city,

14

and state sales and use taxes. The set offs would diminish or mitigate ATM's lost profits award. <u>Frederick</u> clearly precludes the City from setting forth a defense which only serves to diminish ATM's damages at trial. The City waived this defense when it failed to plead it in its Answer.

Moreover, the City voluntarily entered into an agreement with ATM, defining the manner in which the parties measured ATM's damages. Though the City could have negotiated for a mitigation of damages term, no term was included in the Joint Stipulation.[12] Accordingly, the Court finds the City again waived its right to require set offs in ATM's damages. See <u>Aerospace Corp. v. Comdisco, Inc.</u>, 1997 U.S. App. LEXIS 11788 at *12 (9th Cir. May 16, 1997).

The Court finds the City's argument meritless for an additional reason. As the City argues, the Joint Stipulation plainly provides for the use of "actual income and expenses." Joint Stipulation (Doc. #50). It does not, however, include those expenses "required to be paid" as the City alleges. Thus, the Court finds a deduction for <u>unpaid</u> sales and uses taxes improper, as ATM did not actually incur these expenses during the exemplar period, nor did the parties stipulate to the payment of unpaid, but legitimate

---

[12]The Court finds the City's argument troubling. On the one hand, the City claims entitlement to mitigation of ATM's damages, a term not expressly included or reserved in the Joint Stipulation. On the other, the City rebukes ATM for seeking "additional damages outside the scope of the agreed-upon measure of damage." Def.'s Trial Br. (Doc. #80) at ¶ 9.

15

business expenses.[13]

Based on the above discussion, the Court adds an additional $3,399.00 (rounded) to ATM's lost profits. Whereas the City had this amount listed as a deduction in its Trial Exhibits, the Court intended to add the sum back into ATM's net income prior to its pronouncement of ATM's lost profits, consistent with its ruling during trial. Def.'s Trial Exhs. 2A, 3A. The Court thus modifies its bench ruling in accordance with this opinion.[14] It now turns to discuss the City's set off for its business license.

During the trial, the City adjusted its claimed deduction for a business license to the exemplar period. As discussed above in subsection A, the Court finds ATM had no obligation to re-apply for a city business license, as the ordinance constitutes an unconstitutional prior restraint as applied to ATM. Any deduction from ATM's net income for a business license is improper. From the bench, the Court ordered the City's business license deduction including penalties and interest improper. The Court observes the City failed to remove this expense from its charts. Cf. Def.'s Trial Exhs. 2, 3 with Def.'s Trial Exhs. 2A (containing a deduction for $2,936.00), 3A (same). The Court also inadvertently failed to remove the expense from its damages' calculation. It then

---

[13] For the reasons explained above, the Court need not reach ATM's other arguments opposing the City's proposed sales and uses taxes deductions.

[14] The Court notes that during trial, it became clear the City did not compute its sales and use taxes deduction based on the exemplar period. Counsel for ATM also provided the City's experts with evidence demonstrating ATM paid all requisite sales taxes on the video booths. The City's experts made coordinating adjustments to their calculations, which resulted in a city, county, and state use tax only deduction in the total amount of $3,399.00 (rounded). Def.'s Exhs. 4A, 5A.

improperly credited ATM with $750.00 based on the City adjusting the business license expense to the exemplar period. Def.'s Trial Exh. 2A, 3A. Accordingly, the Court modifies its bench ruling and increases ATM's lost profit award by $2,936.00. The Court correspondingly reduces that figure by $750.00 to preclude a double award. The total lost profits award thus increases from the pronounced amount of $371,283.00 to $376,868.00. Having resolved ATM's lost profits award, the Court now addresses whether ATM shall receive other damages.

### 3. Carrying Costs

In its Trial Brief, ATM claims it did not abandon its claim for $133,010.11 in carrying costs or out-of-pocket expenses. Pl.'s Trial Br. (Doc #77) at 4. While the Court agrees ATM did not wholly abandon its claim, the Court finds the carrying costs do not constitute damages under the express language of the Joint Stipulation. In interpreting the Joint Stipulation under its ordinary, plain, and natural meaning, the parties limited ATM's damages to the exemplar period. Because ATM's counsel conceded at trial that ATM incurred all carrying costs prior to the exemplar period, these costs would not constitute "damages" subject to the stipulation.[15]

### 4. Interest

ATM raised entitlement to $49,700.03 for interest payments to Optivest after the

---

[15] The Court reiterates ATM could have, but failed, to negotiate a special term for or exception from the exemplar period covering the carrying costs. At the very least, ATM could have reserved the issue for further negotiation in the Joint Stipulation.

parties agreed to the Joint Stipulation. ATM claims this interest accrued on funds borrowed from Optivest to pay carrying costs during the exemplar period, but it had not repaid the debt during that period of time. At trial, ATM adjusted this expense to reflect the exemplar period, reducing the amount of the interest claim to $17,362.40. See Pl.'s Trial Exh. 6.

In reviewing ATM's Compilation of Revenues and Operating Expenses, the Court observes that ATM lists the interest payment in question as an expense. Id. Other than ATM's assertions concerning the interest expense, it did not provide any evidence demonstrating the debt borrowed from Optivest, and in turn, this interest expense, resulted from the business's closure. Moreover, ATM has failed to show how the debt's funds were used to pay carrying costs during the exemplar period. ATM's bald assertions, without more, do not demonstrate it suffered a compensable injury. The Court finds ATM not entitled to interest in the amount of $17,362.40 as a separate damages award.

     **5.    Prejudgment Interest**

During trial, ATM sought prejudgment interest. The Court denied from the bench ATM's request for prejudgment interest. In federal question cases, prejudgment interest is committed to the discretion of the district court. See Rodgers v. United States, 332 U.S. 371 (1947) (allowing prejudgment interest under the Agricultural Adjustment Act of 1938); Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 63 (3d Cir. 1986); see also

Nat'l R.R. Passenger Corp. v. Rountree Transport and Rigging, Inc., 286 F.3d 1233, 1259 n. 25 (11th Cir. 2002); Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1536 (11th Cir. 1987) (citing Wolf v. Frank, 477 F.2d 467, 479 (5th Cir. 1973), cert. denied, 414 U.S. 975 (1973) (finding the district court did not abuse its discretion in denying prejudgment interest in a federal securities case)). Where a federal statute is silent on the award of prejudgment interest, traditional equitable principles govern the award of such compensation. Bricklayers Pension Trust Fund v. Taiariol, 671 F.2d 988, 988 (6th Cir. 1981). The Supreme Court has indicated the decision to grant or deny prejudgment interest hinges on whether to do so would further the congressional purposes underlying the obligations imposed by the statute in question. Rodgers, 332 U.S. at 373.

      The Court recognizes prejudgment interest is "'an element of complete compensation,'" Loeffler v. Frank, 486 U.S. 549, 558 (U.S. 1988) (citing W. Va. v. United States, 479 U.S. 305, 310 (1987)), and the basic purpose" of § 1983 damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights," Carey v. Piphus, 435 U.S. 247, 254 (1978); Gilmere v. City of Atlanta, 864 F.2d 734, 739 (11th Cir. 1989). Yet, it finds prejudgment interest inappropriate here. Throughout the damages phase of this litigation, ATM's lost profits were estimated and speculative. Indeed, ATM conceded that its lost profits were "difficult to ascertain with precision." Joint Stipulation (Doc. #50) at 3. As described above, the parties disputed this amount for almost two years prior to and especially during trial. It is not until this

Court enters its Judgment, below, setting forth ATM's lost profits that the amount becomes fixed.  Under these circumstances, where the damages were unascertainable until today, the Court finds fairness mandates no award for interest.  The Court finds prejudgment interest inappropriate.[16]

### III.   CONCLUSION

For the reasons stated above, the Court finds:

(1) JUDGMENT in favor of ATM and against the City;

(2) Actual in the amount of $376,868.00;

(3) Defendant shall pay counsel for ATM attorneys' fees in the amount of $30,000.00 pursuant to their joint agreement at trial;

(4) ATM is not entitled to prejudgment interest.

Done this 27th day of September, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

[16] The Court again observes ATM could have, but failed, to negotiate a special term for prejudgment interest in the Joint Stipulation.  At the very least, ATM could have reserved the issue for further negotiation.